UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

*****************************************

NSTAR ELECTRIC AND GAS
CORPORATION,

    Plaintiff,

v.

UNITED STEELWORKERS OF
AMERICA, LOCAL 12004,

    Defendant

*****************************************

Civil Action No. 04-CV-11150-EFH

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

NSTAR Electric and Gas Corporation ("NSTAR") filed suit in order to obtain a declaration from this Court that a grievance brought by Local 12004 of the United Steelworkers of America ("Local 12004") cannot be arbitrated under the applicable collective bargaining agreement. For the reasons discussed within, the grievance at issue is not arbitrable, and this Court should issue a declaration to that effect.

**A. Background**

In December 2002, NSTAR announced that certain health benefits for retirees would be modified, effective April 1, 2003. The modifications have been in effect since that date. Shortly after this announcement, on or about December 31, 2002, Local 12004 filed a grievance (Grievance No. 02-365-001G, or the "Grievance") under the collective bargaining agreement between Local 12004 and NSTAR, in effect between March 25, 2002 and March 31, 2006. This grievance alleged that "[t]he Company has unilaterally changed medical plans without negotiating." This was in apparent reference to the changes to retiree health benefits due to take effect on April 1, 2003. (See

Plaintiff's Concise Statement of Material Facts as to Which No Genuine Issue Exists ("Pl. Statement"), pars. 10, 11).

In response to the grievance, NSTAR's Director of Employee Labor Relations wrote Local 12004's President that "the Company has not made any changes to the medical benefits afforded members of Local 12004 under the current Collective Bargaining Agreement;" that "retirees were notified of the plan changes last month, which will take effect in April, 2003;" and that "three individuals (Kevin Brosnihan, Charlotte Umlah and Ronald McDonald)...were current employees at the time of the notification, but have since retired, and may be affected by this notification." (See Pl. Statement, par. 12).

After the parties were unable to reach a resolution, the Grievance proceeded to arbitration before Arbitrator Gary Altman on March 25, 2004. The Arbitrator did not hear the merits of the Grievance on that date, but instead ordered the parties to submit briefs on the subject of arbitrability. In response to the Arbitrator's order the parties have submitted briefs. No decision has been issued on this question. (See Pl. Statement, par. 13).

On or about January 23, 2004, Local 12004, and several retirees who were formerly represented by that labor organization, brought suit in the United States District Court for the District of Massachusetts in "Charles J. Senior, et al. v. NSTAR Electric and Gas Corporation, et al.," Civil Action No. 04-10160-EFH. The suit, brought under Section 301, and several provisions of the Employee Retirement Income Security Act, 29 U.S.C. §1001 et seq., challenged the modification of retiree health benefits effective April 1, 2003. The modification of health benefits at issue in the Senior litigation is identical to that placed at issue by the Grievance. NSTAR has answered the Complaint in Senior, and an initial scheduling conference was held on June 1, 2004. Dispositive

motions are to be filed within 90 days after the conference, affording the parties a limited period for discovery. (See Pl. Statement, par. 14).

In addition, on May 12, 2004, this Court entered summary judgment for NSTAR on a claim brought by Local 369 of the Utility Workers Union of America, and numerous NSTAR retirees, as well as retirees of NSTAR's predecessors. This suit challenged the same modification of retiree health benefits at issue in the Senior litigation, and in the Grievance. (See Pl. Statement, par. 17).

In the proceedings before Arbitrator Altman, Local 12004 has contended that "[w]hile the Union's court action" in Senior, "as pleaded in the complaint, includes the claims of the three retirees [Kevin Brosnahan, Charlotte Umlah and Ronald McDonald], if their claims are arbitrable *on the merits* the Union will exclude them from the court action...The claims of the retirees are based on a provision of the 2002-2006 agreement that is not available to prior retirees." (emphasis in original). (See Pl. Statement, par. 15).

Further facts, as needed are set forth in the "Argument" section of this memorandum.

B.   **Argument**:   **The Court Should Enter Summary Judgment And Declare That The Grievance Is Not Arbitrable**.

Local 12004 seeks to grieve an issue under the collective bargaining agreement which concerns retirees, but not active employees. For the reasons discussed within, the Court has jurisdiction to declare whether the grievance is arbitrable, and should enter a declaratory judgment that the agreement is not arbitrable.

    1.   **This Court Can Properly Determine Whether The Grievance Is Arbitrable**.

"[T]he question of arbitrability" has been described as "whether a collective-

3

bargaining agreement creates a duty for the parties to arbitrate the particular grievance." See AT&T Technologies, Inc. v. Communication Workers of America, 475 U.S. 643, 649 (1986). It is well-settled that this question "is undeniably an issue for judicial determination. Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." AT&T Technologies, Inc. v. Communication Workers of America, 475 U.S. at 649. Accord, First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995) ("Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clear and unmistakable' evidence that they did so") (quoted in Coady v. Ashcraft & Gerel, 223 F.3d 1, 9 (1st Cir. 2000)).

The agreement at issue provides no "clear and unmistakable evidence" of an intent to allow an arbitrator to decide whether a dispute can be arbitrated thereunder. While the parties did agree on certain procedures "[i]n the event of any dispute between the Union and the Company as to the meaning, application or intent of the provisions of this Agreement" (Article III, Section 2), nothing in the agreement indicates that Local 12004 and NSTAR intended for an arbitrator to decide the issue of arbitrability.

Moreover, it is appropriate for this Court to decide the present controversy. Section 301 is properly used to seek declaratory relief. As held in Tejidos de Coamo, Inc. v. International Ladies' Garment Workers' Union, 22 F.3d 8, 15 (1st Cir. 1994), "[a]lthough section 301 actions are ordinarily brought to enforce contracts, the Declaratory Judgment Act, 28 U.S.C. §§2201-02, permits the declaration of rights about which a real controversy exists..." The court further noted that "section 7 [of the Norris-LaGuardia Act, 29 U.S.C. §107] [does not] pose any barrier to such a declaration; it is directed only against injunctions." 22 F.3d at 15. The present proceeding

undoubtedly makes plain that there is "a real controversy" between Local 12004 and NSTAR over this issue.

## 2. **This Court Should Declare That The Grievance Is Not Arbitrable**.

Pursuant to its authority described above, this Court should declare that the Grievance filed by Local 12004 is not arbitrable. An examination of the governing agreement establishes that Local 12004 does not represent the two (2) retirees whose health benefits the Grievance seeks to restore.

Under Article I, Section 1 of the collective bargaining agreement, NSTAR recognized Local 12004 "as the sole collective bargaining agency in behalf of all Regular employees in" certain departments, "to whom this agreement applies for the purpose of bargaining in respect to wages, hours and conditions of employment." Article I, Section 1 further provides that "[w]herever used in this Agreement, the words 'employee' or 'employees' shall refer only to those employees to whom this Agreement is applicable." Pursuant to Article I, Section 2, "[t]he provisions of this Agreement shall apply only to regular employees as defined in Article I, Section 1. The term 'Regular Employees' means those holding regular positions so authorized by the Company." Plainly, NSTAR recognized Local 12004 only to represent employees, and not retirees.

Consistent with the provisions of Article I, grievances can only be invoked under the agreement to remedy the interests of employees. The text of Article III, Section 2 ("Employee Grievance Procedures"), set forth in Exhibit 1 hereto, when read as a whole, makes this clear. "It is hornbook law that an interpretation which gives effect to all the terms of a contract is preferable to one that harps on isolated provisions, heedless of context." Blackie v. State of Maine, 75 F.3d 716, 722 (1st Cir. 1996).

Viewing the provision as a whole, it is apparent that the grievance cannot be arbitrated. Article III, Section 2 provides that the "procedure of settlement shall" consist of, first, "a discussion of the grievance[1] between the aggrieved employee with his Shop Steward and his immediate supervisor." The second and third steps, and ultimately arbitration, depend upon this "grievance" not being resolved. (Article III, Section 2). The agreement further provides that "[i]n making investigation under paragraph first and second above [first and second steps of grievance procedure], the employees concerned shall first receive permission from the Department Superintendent or someone designated by him, to absent themselves from work." (Id.).

Thus, under the terms of the governing collective bargaining agreement, Local 12004 represents employees, and not retirees. In Article I, NSTAR has recognized Local 12004 to represent employees, and no one else. However, the present Grievance concerns only the health benefits available to two (2) retirees, and specifically whether NSTAR violated the collective bargaining agreement by modifying their retiree health benefits, effective April 2003. The Grievance makes no claim pertaining to health benefits for current employees. That the three (3) individuals who are the subject of the Grievance were employed on the date on which it was filed (December 31, 2002), does not change its nature.

Complementing Article I of the agreement, Article III is limited to grievances which affect the interests of employees (as defined in Article I). The first grievance step requires a "discussion of the grievance between the aggrieved employee" and certain persons (Shop Steward, Immediate Supervisor). Under both steps 1 and 2, "the employees concerned" must follow certain

---

[1] Article III, Section 2 describes a grievance as "any dispute between the Union and the Company as to the meaning, application or intent of the provisions of this Agreement..."

6

steps in order to participate in grievance investigations. The above provisions concerning "aggrieved" and "concerned" employees would be superfluous if the grievance procedure was properly invoked to remedy the claims of persons other than employees, such as retirees. However, "[n]o arbitrator shall have the power to add or subtract from or modify any of the Terms of this Agreement or pass upon or decide any question except the grievance submitted to the Arbitrator in accordance with the foregoing provisions." (Article III, Section 2). Allowing the present grievance to proceed to arbitration, when it only concerns retiree benefits, would "add [to]...the Terms of this Agreement" in violation thereof.

Instead of examining the contract in its entirety, Local 12004 is likely to focus on a portion of the first clause of Article III, Section 2: "In the event of <u>any dispute between the Union and the Company as to the meaning, application or intent of the provisions of this Agreement</u>, the procedure of settlement shall be as follows..." (emphasis added). Local 12004 will contend that this provision disposes of NSTAR's position, set forth above. However, Local 12004's exclusive focus on this provision would result in reading several provisions out of the contract. The Employee Grievance Procedure calls for arbitration only if the "procedure of settlement" fails. (<u>See</u> Article III, Section 2, 3rd, "In the event that no satisfactory settlement of the dispute is reached by the foregoing procedure then such matter may be referred to a Board of Arbitration."). The "procedure of settlement" in turn depends upon the involvement of "aggrieved employee[s]." (<u>See</u> Article III, Section 1, 1st, 2nd). Local 12004 improperly invites this Court to disregard -- or rewrite -- the collective bargaining agreement at issue.

7

### 3. The Declaratory Judgment Sought by NSTAR Will Eliminate Potential Conflict With Ongoing Litigation.

The entry of a declaratory judgment will do more than ensure that an arbitrator does not hear a grievance which is not arbitrable under the agreement at issue. As noted above, currently pending before this Court is a suit brought by Local 12004 and several retirees ("Charles J. Senior, et al. v. NSTAR Electric and Gas Corporation, et al., Civil Action No. 04-10160-EFH"), challenging the modification of retiree health benefits effective April 1, 2003. The changes to retiree health benefits at issue in Senior is exactly the same as that placed at issue by the Grievance.

The declaratory judgment sought by NSTAR will have the salutary effect of eliminating any potential for conflict, given the close relationship between the claims. Moreover, a declaratory judgment will put a halt to Local 12004's efforts to present their claims to every conceivable judicial or arbitral forum.[2] If the Grievance is determined not to be arbitrable, Local 12004 is free to assert the claims of the three (3) employees it contends are at issue in the Grievance in the Senior litigation. This is a far preferable approach than having the present dispute decided piecemeal in different forums.

---

[2] In addition to proceeding before the Arbitrator and this Court, Local 12004 also filed a charge (No. 1-CA-40802-1) with the National Labor Relations Board ("NLRB") under Section 8(a)(5) of the National Labor Relations Act, 29 U.S.C. § 158(a), charging NSTAR with unlawfully failing to provide the names, addresses and telephone numbers of retirees from Local 12004. The NLRB, Region 1 (Boston office), concluded that no such violation had occurred. Local 12004 requested review of this decision from the NLRB in Washington, D.C., which reached the same conclusion.

C.   **Conclusion**

      For all the above reasons, NSTAR prays that its motion be allowed, and that this Court issue a declaration that the Grievance is not arbitrable.

      Respectfully submitted,

      NSTAR ELECTRIC AND GAS CORPORATION,

      By its Attorneys,

      MORGAN, BROWN & JOY, LLP
      One Boston Place
      Boston, MA 02108
      (617) 523-6666

      By: _____
      Keith B. Muntyan
      B.B.O. #361380
      Robert P. Morris
      B.B.O. #546052

Dated: June 23, 2004

### CERTIFICATE OF SERVICE

      I, Robert P. Morris, certify that on June 23, 2004, I caused to be served a copy of the within pleading by hand on counsel for Plaintiffs, Warren H. Pyle, Pyle, Rome, Lichten & Ehrenberg, P.C., 18 Tremont Street, Suite 500, Boston, MA 02108.

      _____
      Robert P. Morris