UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

*************************************

**NSTAR ELECTRIC AND GAS CORPORATION,**

       **Plaintiff,**

v.

**UNITED STEELWORKERS OF AMERICA, LOCAL 12004,**

       **Defendant**

*************************************

Civil Action No. 04-CV-11150-EFH

**PLAINTIFF'S CONCISE STATEMENT OF MATERIAL FACTS AS TO WHICH NO GENUINE ISSUE EXISTS, IN SUPPORT OF ITS MOTION FOR SUMMARY <u>JUDGMENT</u>**

Pursuant to Local Rule 56.1, Plaintiff NSTAR Electric and Gas Corporation ("NSTAR") sets forth its concise statement of material facts as to which it contends there is no genuine issue necessary to be litigated:

**A.**    **<u>Parties</u>**

1.    NSTAR is a corporation with its principal place of business in Boston, Massachusetts. Through its subsidiaries NSTAR is engaged in the sale and distribution of electricity and natural gas. NSTAR is an employer in an industry affecting commerce within the meaning of Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 ("Section 301"). (Complaint for Declaratory Relief ("Complaint"), par. 1; Exh. A to Appendix to Plaintiff's Motion for Summary Judgment ("Appendix")).[1]

2.    United Steelworkers of America, Local 12004 ("Local 12004") is a labor organization

---

[1] All documents referred to herein are included in the Appendix to Plaintiff's Motion for Summary Judgment.

in an industry affecting commerce within the meaning of Section 301. Local 12004 is and has been engaged in representing employees of NSTAR since 1999, and in representing employees of Commonwealth Gas Company for many years before that date. (Complaint, par. 3).

**B.    The Collective Bargaining Agreement**

3.    Local 12004 and NSTAR have entered into a collective bargaining agreement covering the period March 25, 2002 to March 31, 2006 (the "Agreement"). (See Copy of Agreement By and Between NSTAR Electric & Gas Corporation and The United Steelworkers of America, AFL-CIO-CLC, In behalf of Local Union No. 12004, The United Steelworkers of America, AFL-CIO-CLC, March 25, 2002 to March 31, 2006 (the "Agreement"), Exh. A to Complaint; Exh. B to Appendix). In Article I, Section 1 of the Agreement, NSTAR recognized Local 12004 "as the sole collective bargaining agency in behalf of all Regular employees in" certain departments, "to whom this Agreement applies for the purpose of bargaining in respect to wages, hours and conditions of employment." (See Agreement at 2).

4.    Article I, Section 1 of the Agreement provides that "[w]henever used in this Agreement, the words 'employee' or 'employees' shall refer only to those employees to whom this Agreement is applicable." (See Agreement at 2).

5.    Article I, Section 2 of the Agreement provides that "[t]he provisions of this Agreement shall apply only to regular employees as defined in Article I, Section 1. The term 'Regular Employees' means those holding regular positions so authorized by the Company." (See Agreement at 2).

6.    Article III, Section 2 of the Agreement (entitled, "Employee Grievance Procedure") provides that the "procedure of settlement shall" consist of, first, "a discussion of the grievance

2

between the aggrieved employee with his Shop Steward and his immediate supervisor." The second and third steps, and ultimately arbitration, depend upon this "grievance" not being resolved. (See Agreement at 7-8). The Agreement further provides that "[i]n making investigation under paragraph first and second above [first and second steps of grievance procedure], the employees concerned shall first receive permission from the Department Superintendent or someone designated by him, to absent themselves from work." (See Agreement at 7). Article III, Section 2 describes a grievance as "any dispute between the Union and the Company as to the meaning, application or intent of the provisions of this Agreement..." (Id. at 7).

7. Pursuant to Article III, Section II of the Agreement, "[n]o arbitrator shall have the power to add or subtract from or modify any of the Terms of this Agreement or pass upon or decide any question except the grievance submitted to the Arbitrator in accordance with the foregoing provisions." (See Agreement at 8).

8. Article VI, Section 2 of the Agreement provides in part as follows:

Post Employment Benefits

Employees who had retiree health care coverage under the Commonwealth Energy Plan (employees age 40 or older and had completed at least twelve (12) full years of employment as of January 1, 1993, herein referred to as grandfathered employees) keep their current health care benefit provided they retire prior to December 31, 2002. After this date and through March 30, 2006, the Commonwealth Energy contribution methodology and plan eligibility for these grandfathered employees will be applied to the NSTAR health plans. Should these employees choose the newly negotiated NSTAR Post-Employment Plan, they will become eligible for survivor benefits under these plans and will be subject to all of the terms and eligibility requirements of these plans. During the open enrollment period in 2002, these employees will have a one-time option to choose the newly negotiated NSTAR Plan.

>All other Post Employment Benefits eligibility and employee co-payment costs are subject to the Memo of Agreement, dated March 25, 2002, the provisions of which are made a part of this Contract.

(See Agreement at 26).

9. The Memorandum of Agreement referred to in Article VI, Section 2 (Exh. C to Appendix) provides in part:

>Post Employment Benefits - Employees who had retiree health care coverage under the former Commonwealth Energy Plan (employees age 40 or older and had completed at least twelve (12) full years of employment as of January 1, 1993, herein referred to as grandfathered employees) keep their current health care benefit provided they retire prior to December 31, 2002. After this date and through March 30, 2006, the Commonwealth Energy contribution methodology and plan eligibility for these grandfathered employees will be applied to the NSTAR health plans. Should these employees choose the newly negotiated NSTAR Post-Employment Plan, they will become eligible for survivor benefits under these plans and will be subject to all of the terms and eligibility requirements of these plans. During the open enrollment period in 2002, these employees will have a one-time option to choose the newly negotiated NSTAR Plan.
>
>\*\*\*
>
>5. Post Employment Benefits eligibility and co-payment are also outlined in Attachment A and are being provided effective January 1, 2003.
>
>\*\*\*
>
>Attachment A
>
>\*\*\*

**NSTAR**

POST EMPLOYMENT BENEFITS

PRE 65 RETIREES

| Items | |
|---|---|
| Eligibility | Completed 20 years of NSTAR service. To be eligible for life insurance coverage you must also be at least age 55 when your employment with NSTAR ends. |
| Deferral of Coverage | Employee may decline medical coverage and enroll during any future open enrollment period until employee reaches the age of 65. |
| Medical | *Same as active employees – however NSTAR's contribution is capped at 120% of the company's cost for the Blue Care Elect plan as of January 1, 2000. Once cap is reached it will increase by 5% a year. Employee is responsible for any cost exceeding the cap. |
| Prescription Drugs | Same as active employees |
| Dental | Same as active employees |
| Vision | Same as active employees |
| Life Insurance | Declining schedule:<br>Age            Coverage<br>55-59          $50,000<br>60 or older    $30,000 |
| | |

# NSTAR

## POST EMPLOYMENT BENEFITS (continued)

### POST 65 RETIREES

| Items | |
|---|---|
| Eligibility | Completed 20 years of NSTAR service. To be eligible for life insurance coverage you must also be at least age 55 when your employment with NSTAR ends. |
| Medex Plan Offerings | 15% Co-Pay<br>Medex II through Blue Cross and Blue Shield with prescription drugs through Systemed as follows:<br>Retail: $5 copay generic/$10 copay formulary/50% coinsurance with out-of-pocket maximum of $1,000<br>Mail-Order: $10 copay generic/$20 copay formulary/$50 copay non-formulary |
| Medicare HMO's | *Choice of Blue Care 65, First Seniority or Secure Horizons 100% Company paid |
| Dental | Not offered |
| Vision | Not offered |
| Life Insurance | $30,000 |

*Post Employment Benefits

Pre 65 Retiree
Employee co-payment will be 15% of the applicable NSTAR Electric & Gas Corp. premium with the following cap provisions.

NSTAR Electric & Gas Corp.'s contribution toward the cost of medical coverage for future retirees between age 55 and 65 is capped at 120% of the NSTAR cost of Blue Care Elect PPO coverage as of January 1, 2000. Each year following the year, in which the 120% cap is reached or exceeded, the cap will increase by 5%. The retiree will be responsible for any cost that exceeds the cap.

Post-65 Retiree
NSTAR Electric & Gas Corp. will pay 85% of the cost of MEDEX II or 100% of the applicable MEDICARE HMO offered by NSTAR, as selected by the participant. Should the participant choose MEDEX II, the participant will pay the difference between the total cost of the Plan and the NSTAR 85% contribution. This cost may change from year to year and excludes the cost of MEDICARE.

Note: The information contained in Attachment A is a brief summary of the employee benefit plans. Please see the appropriate Summary Plan Descriptions for more comprehensive descriptions of the employee benefit plans.

## C. Changes to Retiree Health Benefits

10. Effective April 1, 2003, NSTAR instituted a series of changes to its retiree health plans covering both union and management retirees. NSTAR communicated the highlights of these changes (including the replacement of Master Medical with Blue Care Elect or two HMO plans, discussed further below) to retirees in December 2002. Complete details of the changes were forwarded in January 2003. As discussed infra, these same changes were at issue in Utility Workers, Local 369, et al. v. NSTAR Electric and Gas Corp., Civil Action No. 03-CV-10530-EFH (U.S. District Court, Mass.). On May 12, 2004, this Court entered summary judgment in NSTAR's favor on all counts, dismissing the case.

## D. Current Grievance Proceedings

11. On or about December 31, 2002, Local 12004 filed a grievance (Grievance No. 02-365-001G) under the Agreement against NSTAR (the "Grievance"; Exh. D to Appendix). The Grievance alleged as follows: "The Company has unilaterally changed medical plans without negotiating." The Grievance alleged a violation of "Article IV, Section 1, Article VI and any and all other articles or agreements."

12. By letter dated January 17, 2003, David Dorant, Director of Employee and Labor Relations for NSTAR, wrote Kathleen Laflash, Local 12004's President, regarding the Grievance. (See Exh. E to Appendix, "Dorant letter"). The Dorant letter stated in part: 1) "the Company has not made any changes to the medical benefits afforded members of Local 12004 under the current Collective Bargaining Agreement;" 2) "retirees were notified of the plan changes last month, which will take effect in April, 2003;" and 3) "three individuals (Kevin Brosnihan, Charlotte Umlah and Ronald McDonald)...were current employees at the time of the notification, but have since retired,

and may be affected by this notification."

13. After the parties were unable to reach a resolution, the Grievance proceeded to arbitration before Arbitrator Gary Altman on March 25, 2004. The Arbitrator did not hear the merits of the Grievance on that date, but instead ordered the parties to submit briefs on the subject of arbitrability. The parties submitted briefs in accordance with the Arbitrator's order, but no decision has been issued. (See Exh. F to Appendix, Affidavit of Lisa Amber ("Amber Affidavit")).

### D. Related Proceedings

14. On or about January 23, 2004, Local 12004 and several retirees brought suit in the United States District Court for the District of Massachusetts under Section 301, and several provisions of the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq. ("ERISA"), challenging the modification of retiree health benefits effective April 1, 2003 ("Charles J. Senior, et al. v. NSTAR Electric and Gas Corporation, et al.," Civil Action No. 04-10160-EFH). The modification of health benefits at issue in this action is identical to that placed at issue by the Grievance. NSTAR has answered the Complaint, and an initial scheduling conference was held on June 1, 2004. Dispositive motions are to be filed within 90 days of the conference.

15. In the proceedings before Arbitrator Altman, Local 12004 has taken the following position:

> After the effective date of the new agreement but before the end of calendar year 2003 three employees, Kevin Brosnahan, Charlotte Umlah and Ronald McDonald, who were age 40 or more and who had completed at least twelve full years of employment as of January 1, 1993 retired. The position of the Union and these now retired employees is that since they retired prior to the end of 2002 they were entitled to 'keep their current health care benefit' under the quoted provision of the agreement. NSTAR apparently disagrees. (Brief for Local 12004, United Steelworkers of America on the Company's

> Motion to Dismiss the Grievance ("Local 12004 Brief"), at 2). (See Exhibit _ to Amber Affidavit).
>
> \*\*\*
>
> While the Union's court action, as pleaded in the complaint, includes the claims of the three retirees, if their claims are arbitrable *on the merits* the Union will exclude them from the court action. Thus there will be no duplication of claims between the two proceedings. The claims of the three retirees are based on a provision of the 2002-2006 agreement that is not available to prior retirees. It is perfectly logical and sensible to arbitrate claims arising under the current agreement while litigating claims of those who retired under earlier agreements. If the claims of these three retirees are heard on the merits by the arbitrator, no retiree claims in the court case will be founded on the provision of the 2002 contract provision relied on here. (Local 12004 Brief, at 8-9). that "[w]hile the Union's court action" in Senior, "as pleaded in the complaint, includes the claims of the three retirees, if their claims are arbitrable *on the merits* the Union will exclude them from the court action...The claims of the retirees are based on a provision of the 2002-2006 agreement that is not available to prior retirees." (emphasis in original). (See Exhibit _ to Amber Affidavit).

16. On or about March 25, 2003, Local 369 of the Utility Workers Union of America, and numerous NSTAR retirees, as well as retirees of NSTAR's predecessors, brought suit in the United States District Court under Section 301, and several provisions of ERISA, challenging the same modification of health benefits at issue in Civil Action No. 04-10160-EFH, and in the Grievance. (See "Utility Workers Local 369, et al. v. NSTAR Electric and Gas Corporation," Civil Action No. 03-19530-EFH). By Memorandum and Order dated May 12, 2004, the U.S. District Court (Harrington, J.) granted NSTAR's Motion for Summary Judgment, and dismissed the suit in its entirety.

Respectfully submitted,

NSTAR ELECTRIC AND GAS CORPORATION,

By its Attorneys,

MORGAN, BROWN & JOY, LLP
One Boston Place
Boston, MA 02108
(617) 523-6666

By: _____
Keith B. Muntyan
B.B.O. #361380
Robert P. Morris
B.B.O. #546052

Dated: June 23, 2004

## CERTIFICATE OF SERVICE

I, Robert P. Morris, certify that on June 23, 2004, I caused to be served a copy of the within pleading by hand on counsel for Plaintiffs, Warren H. Pyle, Pyle, Rome, Lichten & Ehrenberg, P.C., 18 Tremont Street, Suite 500, Boston, MA 02108.

_____
Robert P. Morris