JUN 26 2004

IN THE MATTER OF ARBITRATION BETWEEN

---

NSTAR

AND

LOCAL 12004, UNITED STEELWORKERS OF AMERICA, AFL-CIO

---

ARBITRATION DECISION AND AWARD

### INTRODUCTION

NSTAR ("Company") and Local 12004, United Steel Workers of America ("Union"), are parties to a Collective Bargaining Agreement ("Agreement"). Under the Agreement, grievances not resolved during the grievance procedure may be submitted to arbitration. The parties presented their case in Arbitration before Gary D. Altman, Esq. on March 25, 2004. The Union was represented by Warren Pyle, Esq., and the Company by Keith B. Muntyan, Esq. The parties had the opportunity to examine and cross examine witnesses and to submit documentary evidence. The one witness who testified was sworn. At the outset, the Company submitted a memorandum in support of its position that the grievance was not arbitrable. The Union then submitted a post-hearing brief, followed by a reply brief from the Company. In addition the Union submitted a Federal District Court case on May 24, 2003.

### Issue

At the outset of the hearing the Company raised the issue of substantive arbitrability of the grievance. The Arbitrator bifurcated the hearing. Accordingly, this Decision will only address the issue of arbitrability of the Union's grievance.

### Facts

The facts are essentially undisputed. The Labor Agreement

1

in effect at the time the grievance was filed covers the period of March 25, 2002 through March 31, 2006. In December of 2002 the Company announced that certain health benefits for retirees would be modified effective April 1, 2003. The Union submitted the present grievance on December 31, 2002.[1] The grievance form calls for a signature of the "aggrieved" as well as the Union Representative. The grievance was signed by Kathleen LaFlash, an employee, and the Local Union President. The grievance alleged that the "Company has unilaterally changed medical plans without negotiating". The grievance was denied by David Dorant, Director of Labor and Employee Relations in a letter dated January 17, 2003, which reads as follows:

> This is in response to Grievance # 02-365-011G, dated 12/31/02. As you are aware, the Company has not made any changes to the medical benefits afforded members of Local 12004 under the current Collective Bargaining Agreement.
>
> As you are also aware, NSTAR recently conducted a comprehensive assessment of our benefits and compensation programs. As part of this assessment, retiree health plans were closely examined for cost-effective opportunities for change while continuing to provide comprehensive and market-based benefits. As a result of this review, changes will be made to the retiree health benefit plans so they are more closely aligned with the benefits of your current members. The retirees were notified of the plan changes last month, which will take effect in April, 2003.
>
> There are, however, three individuals (Kevin Brosnihan, Charlotte Umlah and Ronald McDonald) who were current employees at the time of the notification but have since retired, and may be affected by this notification. The Company would like to meet with the Local to discuss their

---

[1] The Union also submitted another grievance dated January 29, 2003. This grievance alleged that the Company changed previously negotiated health insurance for retirees. The Union did not pursue this grievance and this is not the grievance that is presently before the arbitrator.

2

situation. I suggest we do this at your earliest convenience. Please contact me with your availability.

The three employees named in the Company's response are the ones that are subjects of the present grievance. The three employees retired on, or before December 31, 2002.[2] There is no dispute that these employees retired while the current agreement was in effect. Nor is there any dispute that the change in health benefits, which was the subject matter of the Union's grievance, did not occur until April 1, 2003.[3]

**Relevant Provisions of the Agreement**

ARTICLE I GENERAL

Section 1

RECOGNITION OF UNION

[t]he Company recognizes the Union as the sole collective bargaining agency on behalf of all regular employees ...

EMPLOYEE DEFINITIONS

Wherever used in this Agreement, the words "employee" or "employees" shall refer only to those employees to whom this Agreement is applicable.

Section 2

CLASSES OF EMPLOYMENT

The provisions of this Agreement shall apply only to regular employees as defined in Article 1, Section 1.

* * *

---

[2] One employee retired at the end of March 2002. The other two employees' last day of work was December 31, 2002.

[3] The Union and several retirees brought suit in Federal District Court challenging the change in health care benefits for retirees.

ARTICLE III EMPLOYEE GRIEVANCE PROCEDURE

In the event of any dispute between the Union and the Company as to the meaning, application or intent of the provisions of this Agreement, the procedure of settlement shall be as follows:

1st A discussion of the grievance between the aggrieved employee with his Shop Steward and his immediate Supervisor. If no satisfactory settlement is made, the Department Head and the Grievance Committeeman will be called in to the discussion at the first convenient opportunity.

2nd A meeting between the Shop Steward, a member of the Grievance Committee and the Department Head. At this stage the grievance shall be presented in writing on a form mutually agreed to between the Company and the Union. The Department Head will give his answer in writing within seven (7) days unless the period is extended by mutual agreement. This step must be initiated within thirty (30) days of knowledge by the Union of the incident that caused the dispute.

NOTE: In making investigation under paragraph first and second above, the employees concerned shall first receive permission from the Department Superintendent or someone designated by him, to absent themselves from their work.

3rd A meeting between the Grievance Committee and the President of the Company or his duly authorized representative. If a meeting between the parties is to be held it will be requested no later than thirty (30) days after the date of the Department Head's written answer in the second step. The Grievance Committee may be accompanied by a representative of the United Steelworkers of America, AFL-CIO-CLC. This meeting will take place within fifteen (15) days, if possible.

If not, the Local shall be notified in writing, giving the reason for delay. In the event that no satisfactory

4

settlement of the dispute is reached by the foregoing procedure then such matter may be referred to a Board of Arbitration. If arbitration is not so requested within forty-five (45) days of the first meeting of this step, it shall be deemed abandoned unless said period is extended in writing by mutual agreement of the Grievance Committee and the Company.

4th  In the event that arbitration is required, one arbitrator will be appointed within thirty (30) days of the request.  The Arbitrator shall be chosen as follows: The Company and the Union will each designate a representative to choose the arbitrator. If the Arbitrator cannot be mutually agreed upon within ten (10) days of the initial request then said Arbitrator is to be appointed by the American Arbitration Association. No Arbitrator shall have the power to add or subtract from or modify any of the Terms of this Agreement or pass upon or decide any question except the grievance submitted to the Arbitrator in accordance with the foregoing provisions. The Arbitrator will be instructed to render a decision within thirty (30) days from receipt of all materials pertinent to the case. The award of this appointed Arbitrator shall be final and binding on both the Company and the Union. The Company and the Union shall bear the expense equally of the Arbitrator.

Mutually agreed upon extensions will automatically extend the time within the steps of the grievance procedure.

**Positions of the Parties**

Summary of the Employer's Arguments

The Company maintains that the grievance is not arbitrable. Specifically, the Company states that the Union does not represent retirees whose health benefits were changed in April of 2003 and that the Company, under Federal Law, has no obligation to bargain with the Union with respect to benefits for retired employees. The Company first points to the Recognition Clause of the parties' Agreement, which provides

5

that the Agreement only applies to regular employees. Retirees, the Company asserts, are not regular employees.

The Company further maintains that grievances under Article III, the grievance procedure, can only be invoked to remedy the interests of employees. In particular, the Company points to the specific language of the grievance procedure which provides that at Step one, the aggrieved employee will take the matter up with his or her shop steward and immediate supervisor. In addition the Company maintains that the remaining steps of the grievance procedure speak in terms of concerned employees. The Company argues that the terms of the grievance procedure clearly indicate that the grievance procedure is only available to employees and not retirees.

The Company states that the present grievance has nothing to do with benefits for employees of the Company and only pertains to benefits of former employees. The Company contends that the Arbitrator would be modifying the terms of the parties' agreement to permit the present grievance to arbitrated. The Company also submitted and cited arbitration decisions, in which arbitrators determined that the grievance process was not available to retirees. The Company also maintains that the Union has filed a Federal District Court action, challenging the Company action, thus it is not as if the retirees have no other forum within which to address their concerns. The Company concludes that the grievance must be dismissed as being inarbitrable.

Summary of the Union's Arguments

The Union contends that the present grievance is arbitrable. The Union maintains that the present grievance concerns three employees who were employed and retired during the term of the current agreement. The Union states that the

grievance concerns benefits that were promised to the grievants while they were employees of the Company under the provisions of the current Agreement. Moreover, the Union contends that a grievance is broadly defined under the parties' collective bargaining agreement as including any dispute over the meaning, application or intent of the provisions of the Agreement. The present grievance, the Union states, is over the application of Article VI, Section 2 and thus meets the contractual definition of a grievance.

The Union further states that the fact that the Company was not obligated to bargain about benefits for retirees is immaterial as in the present case the Company and Union agreed to these various provisions for retirees and incorporated them into the parties' Agreement. The Union cites cases for the proposition that the Union does have standing to represent prior employees in arbitration when the Employer has allegedly violated the terms of the parties' agreement with respect to these employees.

The Union further maintains that the fact that the steps of the grievance procedure refer to aggrieved employees does not bar the Union from filing a grievance on behalf of persons who were guaranteed benefits under the existing agreement and then left employment with the Company. The Union also contends that the fact that the three employees are plaintiffs in the court action is not a reason to deny the present grievance. The Union states that the three grievants in the present case have rights guaranteed to them under the current labor agreement, which is different than the other group of former employees who retired before the existence of the current agreement. The Union also states that it will exclude the three grievants from the Federal Court action so that there is no duplication of

claims.

The Union concludes that the grievance is arbitrable and a hearing should be scheduled on the merits.

**Discussion**

Arbitrability of the Union's Grievance and the Union's Standing to Process the Present Grievance

Initially, it is necessary to determine whether the Union's grievance is a matter that is covered by the parties' Agreement. There can be no dispute that a grievance in Article III Section 2, a grievance is broadly defined as being a dispute between the "Union and the Company" as to the meaning, application, or intent of the provisions of the agreement". Initially, it must be stated that this is not a case in which the parties have no contractual reference to the subject matter of the dispute. The Union maintains that the Company violated Article VI, Section 2 - Employee Benefits, more specifically, the contract section dealing with "post-employee benefits." The present dispute, therefore, is over the interpretation of the terms of the Agreement. Accordingly, the grievance arises under the terms of the Agreement. This is not a case about enforcing some past practice or challenge to a company promulgated employee handbook where there is no existing contract language. The present grievance is over the application of specific provisions of the parties' Agreement. Accordingly, the grievance is within the scope of the grievance and arbitration provision of the parties' Agreement.

The Company maintains, however, that the grievance is not arbitrable since the grievants retired from active service, and thus are no longer employees covered by the terms of the Agreement and therefore have no standing to file a grievance. It is true that the Recognition Clause of the Agreement applies

to "regular employees". Initially, it must be stated that the grievants in the present case are pursuing contract benefits that allegedly accrued before they actually retired from active service and that were included in the current Agreement. In other words, they are maintaining that they were employees covered under the current Agreement and under this Agreement they were entitled to certain retirement benefits earned by virtue of their employment and their subsequent retirement from employment, the latter of which was an event that occurred during the period of this Agreement. This is to be distinguished from retirees attempting to gain contract benefits that had nothing to do with their status as active employees under the agreement or to gain some benefit that came into existence well after the time they retired from active employment. See eg. Van Dyne-Crotty, Inc. 46 LA 338 (Teple 1966). Thus, the contention that former employees were not provided with benefits that were due to them under the terms of the Collective Bargaining Agreement can be grieved by the Union. It has been stated that:

> [w]hile the Association is recognized to represent 'employees', that right is not cut off by death or retirement or termination of employment. Otherwise, the Association would be disabled from filing a grievance in behalf of an officer who claims he was wrongfully terminated since his employment status has been destroyed by the very action he seeks to challenge. Township v. COAM, 87-2 ARB ¶ 8522 p. 6096 (Ellman 1987).

As stated above, Article VI, Section 2 specifically incorporated post-employment benefits into the parties' Agreement. This is a subject matter that the parties saw fit to include in their Agreement. Moreover, this is a matter that the

parties had legal authority to negotiate and include in their Agreement. There is no contractual bar preventing the Union from pursuing a grievance that alleges that the Company has violated the terms of the Agreement, even if the remedy affects former employees who have retired from active employment of the Company. (See eg. United Steelworkers v. Caron, 580 F.2d 77 (3rd. Cir. 1978). Indeed, Article III specifically defines a grievance as a dispute between the "Union and the Company over the meaning of the Agreement." Thus, the Union would have standing to pursue the present grievance where it maintains that there has been a contract violation.[4]

The grievance procedure in the parties' agreement referring to "aggrieved employees" being involved in the grievance procedure is similar to the one described in Caron, footnote 7, p. 81 supra. Nevertheless, the Third Circuit Court of Appeals in Caron did not hold that that steps in the grievance procedure which referred to "aggrieved employees" should bar a grievance over retiree benefits. The Court stated:

> In determining the very limited issue before us the arbitrability of the dispute the "bottom line" is not calculated by the status of the grievants but by the nature and duties of the obligations of the parties. United Steelworkers v. Caron, 580 F.2d 77, at 82.

The ruling of Caron is directly applicable to the issue in the present case. This is a grievance over the application and meaning of explicit terms of the parties' negotiated agreement. Indeed, to rule that the grievance was not arbitrable would

---

[4] In the present case the grievance was signed by the Union President, there is no suggestion that she is not an employee and thus she could file a grievance on behalf of the Union to attempt to enforce an alleged breach of the Agreement.

deny the Union recourse to enforce specific provisions of the negotiated agreement.[5] Accordingly, the grievance is arbitrable.

**Conclusion and Award**

For the reasons set forth above, the grievance is arbitrable. A hearing on the merits will be scheduled forthwith. Accordingly, the parties shall contact the arbitrator to schedule future hearing dates on the merits of the Union's grievance.

June 25, 2004
Boston, Massachusetts

*[signature]*
Gary D. Altman

---

[5] This also appears to be the reasoning in White v Bell Atlantic, 174 LRRM 2753 (March 23, 2004), a recent decision by Judge Woodlock of the Massachusetts Federal District Court. The Judge stated, "Grievances relating to the benefits accompanying termination of employment 'are not so unlike other types of grievances' that they exempt the employee from the requirement of pursuing his claims through union process. Page 2763. It must also be stated I disagree with the ruling of Arbitrator Traynor, in E-Systems, 86 LA 441 (Traynor 1986) that the Union has no recourse to pursue a grievance for employees who retire under an existing collective bargaining agreement.